We'll hear argument next in Case 18-938, Ritzen Group v. Jackson Masonry. Mr. Layman. Mr. Chief Justice, and may it please the Court, 28 U.S.C. § 158 provides that district courts shall have jurisdiction to hear appeals from final order of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under Section 157. The order in this case merely determined where the parties would litigate Ritzen's contract claim. Under Section 158, such an order is not a final order entered in a case or proceeding. As this Court determined just four terms ago in Bullard v. Blue Hills Bank, the fact that an order disposes of a proceeding is not, despite what Respondent and the government contends, the test for determining finality. That, in the words of the Court, slices the case too thin. Rather, an immediately appealable order is determined by considering the larger process at issue and whether the order is final by examining whether it alters the status quo and fixes the rights and obligations of the parties. In Bullard, the relevant process was the plan confirmation process. Here, the relevant process is the claims adjudication or the claims allowance process under Chapter 5 of the Bankruptcy Code. As in Bullard, the order here did not resolve the larger process. It did not alter the status quo, nor did it fix the obligations of the parties. On the contrary, it simply continued the automatic stay so the underlying claim would proceed in bankruptcy court. In arguing otherwise, Respondent and the government badly misperceived the role of the automatic stay in bankruptcy cases. The automatic stay is not itself one of the substantive processes of bankruptcy. It is a utility provision that supports the operation of these other processes. In fact, it was Jackson who argued that Ritson's motion for relief triggered the claims adjudication process, claiming the stay motion constituted an informal proof of claim. Such an order changes little, and in the words of this Court, it does not alter the status quo or fix the rights and obligations of the parties. Contrary to what the government has represented in its brief, Section 158 was not actually enacted in 1978. In fact, Section 158 was enacted in 1984. The reason this what appears to be a small mistake, I believe, is a very significant matter because it misunderstands the history of the bankruptcy jurisdictional framework. Alitoson, I understand what you've just said. You're not contesting that this was a proceeding. You're just saying it wasn't a final order in the proceeding. Is that right? That's correct. As this Court noted in Bullard, there's an endless number of contested matters, many of which are not of a less significant nature. The question is not on what is a final proceeding, but what is on an immediately appealable proceeding, and in Bullard, the Court looked at the process to determine whether or not that had the indicia of finality. And when would that become final? At the end of the case? We would submit that it would become final under this Court's test that when the status quo changed and when the rights and obligations of the parties were fixed, for example. And when would that be? Well, for example, Rule 8002 actually lays out a fascinating – a very good framework for final orders because it determines what orders cannot be extended in terms of time frame. The first under 8002d2a is the granting of the automatic stay cannot be extended, but the denial of the automatic stay isn't mentioned. The second one, the authorization of a sale under 363, for example. The third one, the authorization of financing under 364. It goes back to the Court's reasoning in Bullard, where the Court determined that there is no – that there is no symmetry in finality, that, in fact, a final rule is often determined, such as the grant of a motion to dismiss, but not a denial of a motion to dismiss. Well, I – maybe you could simplify this a little bit for me. There's a denial of relief from the stay. And when can that party – when can the party who sought relief from the stay take an appeal contesting the denial of relief from the stay? When, in the words of this Court, the discrete dispute between the parties are resolved. When would that happen? As a – in this – Yes. Yeah. In this particular case, at the end of the claims adjudication process. It was the respondent that said that the claims adjudication process was triggered by the motion to lift the stay. Yeah. Okay. And at that point, isn't the issue of whether there should have been relief from the stay moot? No. This Court has recognized at least three different occasions that that is not an unreviewable decision, that that is the decision, as a result of a single appeal rule, that has to be respected and resolved. Okay. What relief would be – could be granted at that point? Just like this Court did in the Olberding case, the Court could vacate the decision and send it back. Importantly, under Rule 502J, it's specifically allowed under the Bankruptcy Code. Under Rule 502J, a – an order that – a claim that has been allowed or disallowed can be changed. An allowed claim can be disallowed. A disallowed claim can be changed. Okay. So the Court says there should have been – on appeal, there should have been relief from the – from the stay. So what does that do for the party who sought relief from the stay? I think your argument has to be that undoes everything that happened since that point, right? Well, with respect, it's no different than a motion to remand, a motion to transfer a venue. It's a motion to deny – a denial of a motion to abstain. Well, it's a little different because the bankruptcy has gone on, right? The bankruptcy has concluded, and part of the bankruptcy is you're divvying things up and depending on how much this person gets, that person gets more, and – but now you say you've got to go back and start over with respect to one person's claim. I don't understand how you can unscramble that egg. But this is something that bankruptcy lawyers deal with every single day. It can be done through a variety of matters. But as a practical matter, Your Honor, given the length of the typical bankruptcy and the length of the appeal, it wouldn't be unscrambled before the bankruptcy process was entered – ended in the first place. As a practical matter, as we cite to you in our reply brief, in the footnote on page 19, the average bankruptcy case is concluded in seven months. The average appeal – the first appeal takes nine months. In this case, the second appeal took a little bit less time than that. But – so as a practical matter, there is no such thing as undoing, because whether you took the appeal at the moment that the stay relief was denied or at the moment that the claims adjudication process was ended, you were still going to have an appeal that extended well beyond the plan confirmation process. And that's why bankruptcy lawyers deal with this issue of claim contingency all the time. And they work with reserves, just like they did here. And the parties agreed that they would not object to the plan on the condition that this appeal could go forward. And there was a security set aside in the amount of $400,000. Now, we don't believe that that sets the entirety of our damages, but that's the security that the parties agreed to. And if that's less than – if that's not enough to cover our damages, then that's the risk that we took in agreeing to that claim. Would you have had the right, if you chose, not to waste your time in adjudicating this in bankruptcy court, and choosing – could you have chosen to appeal immediately after the injunction was denied? Your Honor, I missed the first part of your question. Assuming you wished not to incur the expense and time of adjudicating this in the bankruptcy proceeding, could you have chosen at the time the injunction order denying the request to lift the stay was issued? Could you have appealed then? I believe that under 158, there's an interlocutory operation, 158A.C., as well as 1292A. By definition – So the answer is yes? Yes, Your Honor. So isn't that – As an interlocutory appeal. So isn't that a different question? Since you accept the responsibility that you could have appealed, isn't the issue whether you should have appealed? And isn't there a split on that question among the circuits? Well, Your Honor – Because what you're basically saying is I didn't have to. With respect, Your Honor, I believe that there are two very important reasons. First of all, it's not a matter of having to. It's a matter of whether the Court would have allowed us to under the interlocutory standard. And given the environment that we were in, we did not believe an interlocutory appeal would have been granted. But moreover – Oh, so you're answering me no, that you couldn't have. I don't know what you're arguing. With respect, the question was, could we have appealed? Theoretically, we could have an interlocutory appeal. As a practical matter, that's only with leave of court. And we did not – and so it wasn't something automatically that we could do. And so second of all, with respect to the second appeal, the reality was the – the relationships between the parties were going to result in the second substantive appeal. The question is whether the Court is going to compel the parties to appeal or whether the parties will be able to consolidate their appeals at the end of the discrete dispute. What's the – is it the case that a creditor says to the bankruptcy judge, judge, I don't want to be here. Go lift the automatic stay. And the judge says, you're right. Now, can the debtor appeal? Yes, Your Honor. Okay. If the debtor can appeal then, why can't the creditor appeal if he reaches the opposite conclusion? In both cases, I imagine the immediate appeal is given because in many instances, though certainly not all, getting rid of a creditor or keeping a creditor will change in a pretty significant way the nature of the final plan. Now, what have I said wrong? With respect, this Court addressed that very issue in Bullard. And the Court said that confirmations of a plan change the status quo and set the rights and obligations of a party. But denials, while the parties continue to negotiate, do not do that. They don't do that? Why not? If we have an imaginary case where the creditor who happens to make this motion has $100 million and everybody else taken altogether has $3.50. Okay. Now, it seems to me that getting rid of that creditor would change the nature of the final plan. Wouldn't it? If the merits... I don't think Bullard was addressing that issue. Not exactly, Your Honor. But it was certainly addressing the question of the symmetry that the Court is raising. Okay. So what's the answer to that issue? I'm not saying symmetry automatically makes the same result. All I am saying, it seemed to me, being very much an amateur in this field, but you are not, that the reason for allowing the initial appeal where they grant it is because of the enormous change that might work in the nature of the plan, and if that's the reason, the same thing is true when you deny it. Now, that's what I'm getting as a question. I'm not giving you an answer. I want to know what you think. And under the Bullard standard, I do not believe the denial changes the status quo. As this Court said, the stay remains in effect. Final does not determine the state of affairs. I see. So, in other words, in my case, $100 million gone out of the estate, $3.53 left. That didn't change anything. No. The granting, the granting does change it. No. Now we have it the other way. $100 million is there, as opposed to the $3.53. That changes nothing. The Court does not look at the significance of the matter in determining whether or not it's final. I did. I just said the reasoning seems to be similar if my reasoning is correct. That's why I put it as a question. And I would submit the Court answered this question in Bullard, that unless the status quo is changed, that it's not a final order, because it doesn't end that substantive process. If it's a $3.50 creditor that is otherwise excluded from the estate by the granting of the stay, that's a final judgment with respect to that creditor. If it's a $1 million creditor and that's denied, the status quo is still not changed. The status quo continues, and that creditor continues within the bankruptcy process. Now, I may have misunderstood the Court's question, but I believe that was an attempt to answer it. It does assume some facts and evidence that I'm more of an expert, but I will defer to the Court. I would continue by suggesting that the government's characterization of bankruptcy law is misunderstood. Not only does the government misunderstand the framework for the jurisdiction overlooking the fact that 158 was not passed in 1978, but was something to remedy 1293, which the Court in the First Circuit, In re sacca lo, which this Court has cited favorably, had to address. 1293 did not use the word proceedings. 1293 was drafted in a way that required a final order, but without the concept of proceeding. And there the First Circuit said, we have to we look back over 200 years in how this Court has looked at bankruptcy orders and recognized that in some cases, some bankruptcy proceedings are different, are treated differently, and as a result of that, certainly Congress did not intend to change this under 1293. A year later, Congress fixed that problem with a very elegant solution in 158. In 158, they included the word proceeding to go back and recognize over the last 200 years that there would be some proceedings in bankruptcy that would be final. However, they included a word, a guardrail, to ensure that that did not get out of control, and that guardrail was the word final, a word that this Court had used and interpreted since Congress enacted the Judiciary Act of 1789, and a word that broke that and brings all the soil of 1291 with it. Final is a term of art. Final has 200 years of definition behind it, and that and Congress fixed the problem of 1293 through 158. But to that end, 158, the finality consideration, as this Court recognized and as even the Solicitor General recognized, this finality requirement has significance, has import. It's not just the last order in the sequence. It's not just the order that disposes of a motion for an extension of time. It's not the order that disposes of a retention of professionals. Those are not matters that aren't deemed final. Those don't change the status quo. Those don't fix the rights and obligations of the parties. Second of all, I believe the government is mistaken about 362e. Before you go on to that, I'm not sure I quite understand why, if you agree that the motion for relief from the stay is a proceeding, why an order saying, no, I'm not granting relief from the proceeding, is not final? Well, as this Court noted in Bullard, there are literally countless numbers of proceedings in contested matters. But it stretches the concept of finality to assume that the order that disposes of all those proceedings meets the qualification of what this Court called an immediately appealable order. So what if the order denying relief from the stay says, and this is the final word on this subject, this is not going to be reexamined? It's not final? No, because the stay by its very nature can – is fluid. As even the Sixth Circuit recognized, facts and circumstances can change. Even the Respondent cited a case from the Tenth Circuit at page 38 of their brief where they talk about how the Court had granted relief from the stay, ten months later reconsidered it. The First Circuit in the Atlas case, the basis for their ruling, because there were competing – there was a first-to-file rule question between two district judges. The First Circuit said the order of the stay relief isn't final. Things can change that would cause the Puerto Rican judge to decide that the Virginia judge should go forward. And at that point, the bankruptcy court will have to once reconsider whether the stay applies, whether the stay is final. But the stay by its very nature is fluid. It's no different than the way this Court analyzed a motion to deny a request for abstention under the Gulf Aerospace case versus Myakamas. There, the Court rejected the concept of the collateral order doctrine because the first – the first requirement was that the issue be conclusively resolved. And the Court looked at that and said, abstention, three months – months from now, the district court may decide that the stay court matter should go forward. And so this cannot be a final order by definition because it doesn't conclusively resolve the issue. Now, I would like to also point out that with respect to the injunction that is claimed here, that's defeated by the very terms of the rule. Under 363C2C, the code says that the stay expires upon the discharge. That's something that this Court recognized just last term in Taggart v. Lorenzen, that there is a distinction between the automatic stay and the injunction. There's no – and even going back to Selatex in 1995, there's no textual basis to believe that there is a permanent injunction with the stay that by its very nature, and even Congress in the same legislative history that the government cites, admits is temporary. And then finally, I would argue that they're mistaken about the application of 362E. 362E is a very different part of the motion of the – of the stay than 362D1. 362E relates to actions against the property as opposed to actions against the debtor. Now, in this case, we're seeking – we sought relief under 362D1 for cause. We did not bring basically what was an NREM action or an action regarding a secured party under relief under 362E. There was a lot of ink spilled on the question of 362E, the injunction, the fact that there was a preliminary hearing and a final hearing. I would submit to the Court that those concepts are not applicable here. What is critical here is that the Respondent dragged the motion to lift the stay into the claims adjudication process. It was the Respondent who, in responding to the motion to lift the stay, objected as an informal proof of claim. By objecting as an informal proof of claim, the Respondent is triggering the entire claims adjudication process. And, of course, after that point, we filed an adversarial proceeding. They filed an adversarial proceeding. We had competing proofs of claim. That is the claims adjudication process under Chapter 5, 501, the submission of a claim, 502, objection, 503, the resolution of that claim by the Court. That is the broader substantive bankruptcy process that was resolved here. But this Court has never recognized that decisions about where to litigate are final orders when they're denied. When they're granted, that's one thing. That changes the status quo. That dismisses the case. But when they're denied, those are not final orders. And, finally, I would also point out that from a policy perspective, the question here, as the Court looked in Bullard, the Court noted that if the Court had ruled otherwise, it could possibly give the debtor greater leverage over the creditors because the debtor could hold up the creditors with a threat of appeals. That same dynamic applies here. If you allow creditors, or I should say if you force creditors to take appeals on what is impossible to define the limits of under the Respondent's suggested rules, you're going to tilt the playing field with respect to those negotiations. Debtors are in bankruptcy for a reason. They have limited resources. And to allow or force creditors whose motions are denied, I'm not talking about the motions that are granted, that's the exchange we had earlier, but creditors whose motions are denied are going to change the way the bankruptcy process works. Now, I think that we've even seen that right now with the Sixth Circuit. Most of the courts of appeals have that rule, though. Well, with respect, Your Honor, I believe that that rule is based in most of those cases on an outdated anachronism. Under a former bankruptcy rule, Rule 701, the reality is the only two courts to have that rule are the First Circuit, and that was three months after their ruling in the Bullard case that this Court then affirmed, and the Sixth Circuit. The other circuits, I would submit, their rulings are largely based, and if you look at the majority of them over the last two decades, it would be grants or denials in a very summary, often in a footnote or in dicta, as opposed to a careful analysis of this issue. In reality, under the old bankruptcy rule, under 701, they had to file an adversarial proceeding in order to challenge the stay. Under the new bankruptcy rules, under 4001, that's a contested matter. It's not an adversarial proceeding. But in filing an adversarial proceeding under Rule 701, there was often a claim for relief, Claim 1, just like a declaratory judgment action, Claim 2, breach of contract, and in many of those cases, the underlying merits were determined. When the rules changed in 1984, from 701 to 7001, challenges to stays no longer were raised as adversarial proceedings. Instead, they were raised under Rule 4001 as a contested matter. So it's understandable that courts in the 82 to 84 circa were deeming a motion to lift the stay in an adversarial proceeding context as a discrete substantive dispute between the parties that often resolved a discrete within that proceeding. Your theory under the Bullard test is that the denial of relief from the stay does not alter the status quo for the creditor. Your Honor, it doesn't alter the status quo for either one. And why is that on the status quo? I guess this might depend on how you define status quo. But it's going to prevent the creditor from enforcing judgments and seizing property and the creditor is going to lose money. So I guess that depends on status quo. But they're going to have effects. No, the status quo was determined at the date of the filing of the bankruptcy. Right. It was originally dating back to the filing of the bankruptcy. And as this Court noted in Bullard, when the plan confirmation was denied, the stay continued. The status quo did not change. What we're contending is nothing changed in the bankruptcy court. I'm sorry. Thank you, counsel. Mr. Dunham. Mr. Chief Justice, and may it please the Court. Section 158 of the Judicial Code provides for a district court's jurisdiction over final decisions and orders that are issued in proceedings. In this case, it appears as though Ritson has conceded that a stay relief motion and a notice to the debtor and a hearing on that motion constitutes a proceeding. So the only issue now is whether or not that order issued by the bankruptcy court was indeed final. With respect to finality, this Court can simply borrow to the age-old tradition of what finality means under Section 1291 of the Judicial Code. And that is whether or not the order leaves nothing else to do except for execute upon the judgment, in this case, the decision. The bankruptcy court made it very clear that upon entry of the order dismissing I'm sorry, the order denying the motion for relief from the automatic stay, there was only one thing to do, and that was to have the claims adjudication process happen within the bankruptcy case. Therefore, that was a final decision that conclusively terminated the proceeding. There was nothing left to do for the parties except to take the issues between the two, the claims and the counterclaims, and have them resolved by the bankruptcy court. Well, there's nothing left to do between the parties other than litigate the case. That's correct, Your Honor. Well, that's kind of a big part of the whole thing. Right. And the important nuance there is there's nothing left to do with respect to the decision that denied stay relief. Certainly, there was going to have to be some negotiations, possibly some litigation within the context of the bankruptcy case. But with respect to the stay relief motion, that decision, there was nothing left to do upon entry of that decision to execute upon the judge's decision that all the claims adjudication would have to run through the bankruptcy case. The summary judgment motion, once it's decided, there's nothing left to do in respect to the summary judgment motion. All there is is, as the Chief just said, litigate the entire case. You want to say the summary judgment motion is final? Your Honor, a grant of a summary judgment is indeed final. And we can appeal, everybody's going to appeal from the summary judgment motions. Yes, Your Honor. Those would be raised within the context of an adversary proceeding. But what about a regular case out of the bankruptcy court? Yes, Your Honor. I never heard of that, that you could appeal immediately from the denial of summary judgment. Not from the denial of summary judgment. No, Your Honor. I'm sorry. I understood the question to mean a grant of summary judgment. No, no, no. That would be the case, obviously. But we're here talking about a denial of the motion, not a grant. That's correct. So, Your Honor, in the context of a denial of summary judgment within an adversary proceeding in a bankruptcy case. I'm literally talking about summary judgment. I'm just repeating, really, what the question of the Chief is, and I want you to focus on that, that the fact that it's over in respect to what the particular motion is about doesn't necessarily prove that it's a final judgment. Maybe there are other things that are. Deny a request to call a witness. That is over in respect to the witness calling the case. It's not a final decision you can appeal. You see, I mean, that's, I think, the thrust of the question. So that's what I think we wanted you to hear. And, Your Honor, I believe that to answer your question, I believe in the oral argument in Bullard, Justice Breyer, you had mentioned the fact that Colliers identifies approximately 47 contested matters. And so to the extent that someone has denied the opportunity to call a witness, that wouldn't be a proceeding. I'm not being literal. I just maybe want to say something extra about why this is final. And if you do, I apologize for interrupting your two minutes opening. So I at least will not ask a question for the next two minutes. No, Your Honor. Old habits are hard to break. I apologize. Your Honor, for the court's edification, I waive my right for any of the two minutes. I anticipated that's what you were doing. Yes, Your Honor. Yes, Your Honor. So the question about finality is whether or not any decision is final, is determined by whether or not there's anything left to do except for execute on it. The real hurdle is whether or not it constitutes a proceeding. So certainly the claims adjudication process was going to be subsequent to the stay relief motion and that stay relief proceeding. However, the finality of the stay relief order cannot be dictated by a future proceeding that is going to result in litigation. Why not? Meaning what Retson points out is that in the proceeding that's going on, the issue of bad faith is going to be litigated. And during that litigation, the motion can be renewed to lift the stay and if, you know, part of or lift the stay. So it's not final, final in the sense of it's subject to renewal under changed circumstances. So. Yes, Your Honor. There are two responses to your question. The first one relates to the reason for the filing of a stay relief motion. In this case, they asserted bad faith. But a reason for filing is different than whether or not there's been a denial of the relief requested. So the sole relief that was requested was going back to state court. The reasons for going back to state court were rooted somewhat in bad faith. So the court's determination of whether or not the reasons were valid is simply an evidentiary issue that is subject. I'm not sure that, like, gets at it. No, no. I think we're asking the same thing, which is forget about the reasons. Just forget about them. Forget about the nature of the claim. There is a lift stay request. It has been denied. It can be subject to reconsideration later. That's Justice Sotomayor's point. And I think you'd agree. Maybe you'd tell me that's wrong. It can't be ever revisited. But if it can be, does that pose a problem? It does not. And I would say that in response to the question about whether or not there could be a renewed state relief motion, certainly any party can file a motion at any time seeking relief from a prior order that's been entered. However, in the context of a state relief order that's been denied, any renewed motion, if based on the same facts, certainly is going to be denied for law of the case and for other estoppel reasons. No, no, no. I mean, a judge is free to change his or her mind during the life of a case and find it persuasive today but didn't find it persuasive yesterday. That's the nature of interlocutory orders. And again, I'm just, I may be beating the dead horse, but I think this is what the Chief Justice, whose two minutes I'm sure is up by now, Justice Breyer, Justice Sotomayor, and now me, are asking all basically the same thing, is how do you call something final if it's subject to reconsideration by a judge for a considerable period of time? And, Your Honor, I will submit that reconsideration or the filing of a renewed state relief motion does not determine that a prior order that's been issued is final or interlocutory. It's simply a creation of a new proceeding if there's a renewed motion based on a change of circumstances. Because, like in any bankruptcy case, certainly the facts can change during the duration or the pendency of the case. But what an anomaly. You concede that a motion to dismiss, if it's denied, is not immediately appealable. Yes. But now you're saying that a motion to lift a stay is, not only is, but must be immediately appealable. There's a dichotomy there. They're the same thing. They're based on the same argument, bad faith. Why should we have one piecemeal litigation and one not? The simple answer to your question, Justice Sotomayor, is that a motion to dismiss, a motion for a change of venue, a motion for remand, all of those are not proceedings if they are denied simply because there is no alteration of the status quo and the denial does not fix the rights and obligations of the parties. It doesn't move the case forward and, therefore, to use the court's words, it changes little. A stay relief motion is entirely different. That is the opportunity for a court to lift one of the most fundamental building blocks of any bankruptcy case. And, therefore, when the judge ultimately and finally and conclusively terminates that proceeding by denying the stay relief, it not only informs the court, I'm sorry, informs the movement that the litigation has to occur in bankruptcy case, but it also prevents that creditor from being able to rely upon the state court right to a jury trial, the state court rules of evidence, the state court rule of procedure, the ability to adjudicate the claim in state court as it could have done but for the existence of the bankruptcy petition. And, therefore, it does change a lot and it does move the case forward by denying the relief from stay so that the parties can adjudicate it in bankruptcy court. It's also important to note that although Ritson disagrees with this contention, both the government and Jackson Mastry on the same page that the filing of a bankruptcy petition creates effectively a temporary restraining order. And this is based on the legislative history in other courts. The preliminary hearing on stay relief creates a de facto preliminary injunction. When the order is finally denied, I'm sorry, the motion is finally denied, that's akin to a permanent injunction that's going to remain in place until discharge, case closure, case dismissal, or when the property revests and the debtor. That's simply the fixing of the rights of the parties because once that denial of stay relief is entered and the permanent injunction effectively goes into place, the ability to file a relief from the stay under 362, it goes away. And so it certainly does move the case forward and it certainly disposes of a discrete dispute within the larger bankruptcy case. Could I ask you to respond to your friend's comments on the difficulties or lack of difficulties of entanglement, I guess I'll call it. In other words, the fact that the one, in the absence of finality that the case would require going back to the unraveling what had happened in the bankruptcy without the claims being adjudicated in the state proceeding? Yes, Your Honor. I believe that the term that was used was whether or not it's going to unscramble the bankruptcy case. And certainly there is a stay relief denial and then there is case administration, there's negotiations, there are plan proposals. Ultimately in this case there's plan confirmation where creditors are provided treatment and then Jackson Masonry is able to perform under the plan. Ritson now seeks to wait until the end of the bankruptcy case without objecting to the plan after confirmation, after the adjudication of its claim to which it expressly consented to the jurisdiction of the bankruptcy court. And now it wants to ask this court to ultimately provide it a path to go back to state court and get a different result. And that different result would blow up the entire bankruptcy case. If Ritson is correct at the state court level, which we obviously posit it wouldn't be, but if it could go back, that changes the entire dynamics of the bankruptcy case. Creditors have already been paid in this case. The plan has been substantially consummated. There are a number of hours that are involved in that entire process. You're not arguing the case is moot, are you? I certainly believe that the case is equitably moot on several grounds. Legally moot? I don't believe it's legally moot. I believe that it's equitably moot. And if I may, Your Honor, answer the question as to why that is. Equitable mootness, at least the mootness standard, the mootness principle is founded upon the simple position, whereas whether this court is able to fashion a remedy that restores Ritson to the previous position, it cannot in this case because there, one, has been a plan that's been proposed and confirmed that included a discharge and also included a plan injunction against proceeding that has not been appealed. Ritson tries to argue in its reply and argued at the podium today that that was carved out in connection with plan confirmation, but it wasn't. If the court can look at the docket, it can see that only the claim objection and the two adversary proceedings were carved out. And so the one remaining issue that has been appealed that was not carved out was the denial of the stay relief. So now that Jackson Masonry has obtained that plan confirmation that has resulted in a discharge, revesting of the property and a plan injunction, it is effectively moot because there is no automatic stay that exists. If there's no automatic stay that exists, how can Ritson get relief from the automatic stay in connection with a future appellate proceeding? That's the first part. The second part is that nothing required Ritson to consent to the jurisdiction of the bankruptcy court, but it filed an adversary proceeding and without reservation and allowed the bankruptcy court to determine the case to finality. This court in Caterpillar v. Lewis had a similar type of situation where the court ultimately concluded that a procedural defect is not fatal if a federal adjudication exists and there was jurisdiction at the time of entry of the judgment. That's what we have here. We have an adjudication on the merits of the breach of contract claim. Ritson consented to it. Nobody contests that the bankruptcy court had jurisdiction. And now wants to unwind it and do what this Court proscribed by allowing for the exorbitant cost of a dual trial when a district court sitting with jurisdiction has already made the decision. Breyer. That's true. But in every case throughout the entire legal system, there's always a choice of the kind at issue here. If you say that you have to wait to the end of the case to appeal the result you don't like of a motion, if, for example, X wants to leave the bankruptcy judge or the trial judge, no. Okay? If you have to wait until the end of the case and appeal it, if the judge was right, no problem. But if he was wrong and you were right, everything has to be done all over. So you say give him an immediate appeal. If you give him an immediate appeal, what happens is what he said. You have all that time of nine months of having an intermediate appeal. If there are 1,000 creditors, they might all do it, and God only knows how long this case is going to take. That's why they have big backlogs in some other countries. They're too kindhearted in allowing immediate appeals. Okay? So you want to say something about that? How do we balance those two? I would love to respond to it. And there are two things that I'd respond to. One is every creditor in the country should be lining up behind our side of the podium here. And the reason is because what Ritson is proposing is to moot every creditor's ability to obtain meaningful relief on appeal when the state relief order was denied. And that's simply because upon planned confirmation and discharge occurs, there is no stay in place, and therefore, any party who tries to appeal the denial, it's immediately moot and it's going to be dismissed. So I would say that to answer the first question is that there might be more appeals during the pendency of the bankruptcy case, but those would be meaningful appeals. And creditors need to have the ability to have a meaningful appeal, not one that gets mooted. The second issue that I have with Ritson's position and that responds to Your Honor's question is that we have to presume that creditors are going to act in their own economic interest in connection with the bankruptcy case. In a case like this, where the bankruptcy court is saying that we're going to adjudicate it through a truncated summary claims adjudication procedure, that a lot of time and a lot of money on an appeal process just to get to an even lengthier and more expensive state court when it could be resolved. Debtor-side lawyers, we're not afraid of appeals during bankruptcy case. And certainly to the extent that this piecemeal litigation continues to crop its head in this case, piecemeal litigation is the concern about extending the length of a bankruptcy case. And I'm sorry, extending the length of any case. But bankruptcy is different because obviously it's an aggregation of many individual disputes. And the concern is that if you wait until the end of a case, that's an additional time where a debtor remains in bankruptcy, certainly is not creditworthy when financing is important. It has to incur the United States trustee fees that are always going to be occurring so long as the case is open. And lastly, the competitors of a debtor are able to use the existence of bankruptcy against them in the marketplace. They argue from the language in Bullard that the alter the status quo language in Bullard that this doesn't, the denial here doesn't meet that test. Can you address that? I certainly can. Justice Kavanaugh, the reason that Bullard is perfectly consistent, obviously Bullard stands for the proposition that an order denying confirmation is interlocutory for obvious reasons. In that case, the debtor had an opportunity to amend, did not move the case forward. Based on that precise language, alter the status quo, so if you can zero in on that. Yes. So alteration of the status quo in our case comes from two different levels. One is because the court unequivocally decided that the claims adjudication process would be in bankruptcy. So prior to that ruling, it was an unknown as to whether or not it was going to be adjudicated in state court or bankruptcy court. The court made it clear. The second reason is, to use our injunction analogy, is that you have various stages of the injunction process. We all know that a permanent injunction, at least our position is that a permanent injunction can be and should be immediately appealable. And so to the extent that the petition creates a TRO, preliminary hearing creates a preliminary injunction, and then the denial of a motion to dismiss is effectively an injunction against that creditor for the duration of the bankruptcy case until it gets revisited. So the alteration of the status quo is the fixation of where the claims are going to be adjudicated and also moving it from just being a creditor who has rights under 362 to one whose rights have been fully exhausted under 362. Alito, it's true Bullard did use this phrase, alteration of the status quo, and in a particular context, but do you think we should elevate that to an essential element of finality? Is the final order in a case as ordinarily understood always one that alters the status quo? Sometimes the effect of the final order is to leave the status quo in place. Your Honor, it is our position that the use of the term status quo I believe was used, it was one time in Bullard, and it came to define really what it took to move a case forward. And so there, in subsequent sentences, so our position is not that status quo needs to be established every time in order for there to be finality. We think status quo is more of a definition of the proceeding as opposed to finality. We compartmentalize it by arguing that finality is looked at by whether or not there is anything left to do. So proceeding does involve the status quo. And so I think that in order to have a proceeding, discrete dispute, significant, and one that moves the case forward. Sometimes that status quo could move the case forward. So our position is not that that should become a new standard. However, even with the alteration of the status quo language used in this case, we believe that the status quo has been altered for the reason. The Sixth Circuit viewed it differently than you. No, Your Honor. We seem to think of it as part of the finality order. The Sixth Circuit's opinion, we think, is perfect because it considered the fact that there can't have finality unless there's, if there is, without prejudice. Your Honor, I cede my time. Please finish your answer. And so the Sixth Circuit said that the finality test is difficult because we haven't given the parties a test. But it looked at it in two tranches, the first one being whether or not we have a proceeding and whether or not it was final. It's our position that the Sixth Circuit looked at the significant consequences and alteration of the status quo, fixing the rights and obligations of the parties to determine the proceeding portion. And then with respect to finality, that an order is final if, a little bit different than our position, an order is final if it does fix the rights and obligations of the parties again, but there is nothing else that needs to happen in order for the judgment to be executed. Thank you, counsel. Mr. Siree. Mr. Chief Justice, and may it please the Court. I'll begin with the questions that were just posed about the status quo language in the Bullard opinion. It depends on how you understand that language in terms of whether we think it would be a good idea to elevate that into an element of the test or not. If all you mean by altering the status quo is fix an obligation that had previously been uncertain, liquidate something that had previously been unascertained, then we're perfectly fine saying that that's a part of finality. If, however, by status quo alteration, what is meant is that there is some action out in the world that one party couldn't take or that the other party couldn't take that he now is able to take or vice versa, we think that would be an improper understanding of finality. I'll give a couple of examples to illustrate that. If a lawsuit in which a defendant is sued for damages ends in a judgment for the defendant, you could say in one sense that the status quo hasn't changed. The defendant didn't have to pay damages before the lawsuit ended and he doesn't have to pay damages after the lawsuit ended, but we'd still understand that that's a final order because that put an end to that lawsuit. Similarly, if there were a temporary restraining order issued at the beginning of the case and a permanent injunction issued at the end of the case, there is a sense in which the status quo might not have changed, namely that the party that's enjoined was prohibited from doing that act both before and after the final judgment. But that doesn't change the fact that it is a final judgment. Mr. McLaughlin. Counsel, on that, the Sixth Circuit placed a great deal of stress, it seems, on the fact that the state relief denial here was entered with prejudice in its view. But what difference does that really make in a bankruptcy proceeding where orders are revisable all the time? So is that even a thing that exists to say it's with prejudice when it's not really with prejudice? And if it really is without prejudice as a practical matter, what effect does that have on your argument here? That's a fair concern, Justice Gorsuch. The first answer to that concern is that as a general matter, if the bankruptcy court says that it is denying a motion for state relief, the creditor can't just come back and refile the motion. Now, I grant there is an exception to that principle. That exception is that under Rule 60B and analogous equitable doctrines, a court can revisit a determination that it's already made if changed circumstances make that original decision no longer equitable. But that's not unique to the automatic stay. Any equitable decree, including those that we would all recognize as final judgments, can be reopened if the circumstances change. Does it really have to meet the standards of 60B as post-final judgment relief in normal civil litigation? So we acknowledge there that there already is a final judgment and some extraordinary circumstances have to be met. It's not just that it's a new day and I see things differently. But in the context of an ongoing bankruptcy proceeding, is the standard that high? Is it as high as 60B? Or do you have any authority to that effect that could help me? Or is it really just the bankruptcy judge's equitable sense? It is not just the bankruptcy judge's equitable sense. And the best way to see that is in Section 362E, where Congress repeatedly uses the word final to refer to a bankruptcy judge's determination of a stay relief order. That word can't be given meaning if the bankruptcy judge is simply allowed to come back and say, oh, I'm revisiting. Do you have any authority to that effect? I'm not aware of a specific case of this Court or a court of appeals holding to that effect. But I think the bar. So if that were right, though, that would also undercut, and I apologize for proceeding, but this just follows from what you said, that if it really is a matter of statute that compels this understanding of a stay relief denial, then whether the judge adorns it without prejudice, it's still really with prejudice. Any stay relief denial is with prejudice. That follows from, I think, what you're saying, unless I'm missing something, which perhaps I am. No. The statute provides for another type of denial of stay relief, what it labels a preliminary denial of stay relief, where the bankruptcy judge says something like, I'm denying relief because the debtor has a likelihood of success, but I want further proceedings. And we don't contend that that would be final. Where the bankruptcy judge, however, says, I'm not contemplating further proceedings, this is a conclusive determination of stay relief. So to tie it up in a bow, the Sixth Circuit had it right, just used the wrong terms. It's not with or without prejudice. It's preliminary versus final. Yes, essentially. Mr. Suri, may I take you to a different place? Yes. In the last page of your brief, you refer to another circuit split. Apparently, there are some circuits that say, although you may bring an appeal immediately, you don't have to, and you can wait until the end. And you suggest that we don't have to think about that question. But for me, that question is very tied up in all the policy concerns that we've been addressing here, the question of piecemeal appeals on the one hand versus the danger of undoing a bankruptcy proceeding on the other. And those policy concerns, for me, have a lot of traction in this case. I'm not sure what else really to go on. So how can we decide this case without deciding whether when we say something is immediately appealable, we really mean it has to be appealed at that time? I'll start with this case and then turn to the broader issue raised by that split. So in this case, regardless of whether, as a legal matter, one is required to appeal immediately rather than waiting until the end of the case, as a practical matter, as Justice Alito pointed out in an earlier question, there won't be an opportunity for effective review at the end of the case anyway. So in this case, as a practical matter, there would likely be a requirement of taking an immediate appeal. Now, on the broader question, the issue essentially is, when a litigant takes an appeal from the final order at the end of the case rather than the final order at the end of an individual proceeding, is he allowed to raise, as a ground for reversal, some mistake made earlier in the proceedings or earlier in the case, even if he had an opportunity to raise that earlier on and chose not to do so? The government hasn't taken a position on that, but if it would be helpful, I could lay out the arguments on both sides. On the one hand, in ordinary civil litigation, the rule is that you're allowed to raise any error made along the way in the case at the end when there's a final judgment, even if under the collateral order doctrine or some special interlocutory appeal statute, you had a right to take up the appeal earlier on and you chose not to do so. On the other hand, there are good reasons to think that bankruptcy might be different. In bankruptcy, there is this concern about unscrambling the entire bankruptcy at the end because of some, some error made along the way earlier on. So I think in this particular case, the Court doesn't need to know the answer to that question in order to resolve whether an automatic mistake or not. Sotomayor, you're suggesting, then, that this kind of relief and motion to lift the stay should never be considered revisible at the end, but there may be other types of motions that should? I'm a little confused. We are highly skeptical that this type of order can be a basis for overturning a final judgment at the end of the whole bankruptcy case. We're not ruling out that there may be other types of orders that might be treated as such. Why shouldn't we just decide this question? Why doesn't the government have a position? Why isn't this ripe to decide it now? It seems very tied up in the whole thing. The Court shouldn't decide the question because no one's briefed the question. And the government doesn't have a position on it because that was not part of the question presented. It was not argued below. It was not argued as part of this case. When you very objectively and nicely laid out the competing positions, must certainly seemed a lot stronger than may. That is a fair inference about where the government might be leaning on that question. I'd like to address the broader issue of what counts as a proceeding. Essentially, when we're looking for a proceeding, we're looking for something that's a case within the case, something that could stand on its own outside the bankruptcy as an independent lawsuit. An example of that is the automatic stay adjudication. Its equivalent outside bankruptcy would be a freestanding lawsuit about whether to enjoin the creditor from taking particular action against the debtor. And if that lawsuit ends in a permanent injunction, we'd all say that's a final judgment, the same way when the stay relief proceeding ends in a final — in a stay relief order, that's a final order as well. In contrast, some of the examples that Justice Breyer raised would not stand alone as independent lawsuits. A motion for summary judgment, for example, would not be its own lawsuit outside bankruptcy. It would be part of another lawsuit. So we wouldn't count that as a proceeding and we wouldn't count the order ending that as final. Breyer, why is lifting the stay separate? You could have a lawsuit outside bankruptcy that is analogous to a lift stay proceeding. This is discussed in both of the conference — both the House and Senate reports, which is just a lawsuit about whether a creditor should be enjoined from taking action against the debtor. Thank you, counsel. Five minutes, Mr. Layman. Thank you. I'd like to begin with where the government ended and then move through some of the questions that were raised. But we have here today the same arguments that the government presented last time. They took the same position that the Court should determine the finality of the order based on the proceeding. And the only difference here in their briefing is, well, now it should be proceedings that are significant. The Court rejected that logic last time and it should reject that logic again this time. In this case, I would strongly disagree with my friend who suggests that the stay has an equivalent proceeding outside. Unlike — there are things that are similar, such as the claims adjudication process. That's a State law contract type of claim. A dip financing, debtor in possession financing, which would be like a State court lien dispute or a 363 sale where a State court complained to enjoin the sale or quiet title. But the idea that the stay has a parallel common law State cause of action is not something that is supported and is not something that there's any basis in the briefing to suggest. Now, I'd like to go back to the questions raised by Justice Sotomayor about revisiting the automatic stay. And I'd like to address the four points that were given. First of all, the Respondents actually cited a case to the Court that changed that. On page 38 of their brief, the Glenn — the Gledhill case from the Tenth Circuit actually granted relief from stay and 10 months later then reconsidered and changed that. Of course, we've granted other circuits where the result was the opposite, where the Court denied relief from stay and recognized that that might change later. Number two, there was a suggestion by my friend that it would require a new proceeding to renew the automatic stay. That's exactly true, no different than in Bullard, where it required a new proceeding for a new plan confirmation. But the Court recognized that didn't change the analysis. The fact that a new plan would have to be submitted under a new proceeding did not suddenly make the old proceeding an immediately appealable proceeding. Number three, the Respondents suggested that the motion to dismiss was not a proceeding, but in fact that is. In fact, it's deemed a core proceeding under 157B. And then finally, the Government suggests in a rather surprising way that there's no basis to suggest that 60B — or that we have to have 60B as the standard for revisiting the automatic stay — with absolutely no authority to support that view, other than the suggestion that 362E somehow imports a standard under 60B. First of all, there have been no cases to suggest that. In fact, the only cases that have been submitted to this Court suggest just the opposite. But the Respondent and the Government continue to ignore the fact that 362E relates only to actions against the property. And if the Court would look at the appendix to the Government's brief, we did not include 362E because we did not believe it was relevant. But on the Government's brief at 4A, if you read 362E1, the provision provides 30 days after a request under subsection D of this section for relief from the stay of any act against property of the estate under subsection A of this section. Now, with respect to the questions about the permanent injunction, again, neither party has addressed the question that, by definition, under the statutory rules, 363 — 362C2C says that the stay expires. The word injunction is nowhere in 362. The stay expires on the discharge, which is what this Court recognized last term in Lorenzen. And by definition, it cannot be a final order because it is not a final injunction. It very well may act as a preliminary injunction under 1292A, but that is something that this Court and Congress recognizes at an interlocutory appeal, not a final order. Now, with respect to the question about the scrambling of the eggs, the concern of the Court has been addressed by what exactly happened here. First of all, the creditors have been paid, as the Respondent represented, but they all got 100 cents on the dollar. That was represented from day one, and that was, in part, the basis for the bad-faith claim that the bankruptcy was filed inappropriately. So the fact that the creditors were paid 100 cents on the dollar, I see my time is up. Sotomayor, you didn't finish your thought. The fact that the creditors received 100 cents on the dollar did not mean that this will be unscrambled, and they received $5.6 million in cash since then, that we believe would satisfy any problem that we have. Thank you very much. Thank you, counsel. The case is submitted.